UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC CLERK, CHARLESTON, SC
2026 AUG 24 AM 10: 47

| | |
|---|---|
| Jay Connor,<br><br>Plaintiff,<br><br>Vs.<br><br>33 Mile Radius LLC d/b/a Everconnect, Keyword Connect<br><br>and<br><br>Carolina Gutter Helmet LLC d/b/a Hutchco Home and Bath, Jacuzzi Bath Remodel<br><br>Defendants. | C/A No: 2:26-03627-JD-MGB<br><br>**COMPLAINT**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff complaining of the Defendants alleges as follows:

**TYPE OF ACTION**

1. This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section § 37-21.

**PARTIES**

2. Plaintiff is a resident of Charleston County, South Carolina.

3. The calls ("Calls") alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4. Defendant 33 Mile Radius LLC d/b/a Everconnect, and Keyword Connect is an Ohio limited liability company.

5. 33 Mile Radius is in the business of making calls and selling leads to home improvement companies like Defendant Carolina Gutter Helmet.

6. Carolina Gutter Helmet LLC (hereinafter "CGH") d/b/a Jacuzzi Bath Remodel and Hutchco Home and Bath is a South Carolina limited liability company.

## JURISDICTION AND VENUE

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*.

8. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

9. This Court has specific personal jurisdiction over Defendants because they purposely availed themselves in conducting business in South Carolina and calling an individual with a South Carolina area code.

10. This cause of action arises out of conduct of Defendants initiating or causing telephone solicitations via telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the acts giving rise to the complaint, namely, the illegal telemarketing conduct, took place in this District because the calls were sent into this District to a South Carolina area code.

## The Telephone Consumer Protection Act

12. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

13. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id*...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

14. The TCPA provides a private right of action under section 47 U.S.C § 227 (c)(5) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

15. The TCPA also provides a private right of action under section 47 U.S.C § 227 (b)(3) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

## The South Carolina Telephone Privacy Protection Act

16. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, et seq.

17. The SCTPPA requires that "at the outset of a telephone solicitation, a telephone solicitor shall provide...the name of the person on whose behalf the telephone solicitation is being made." 37-21-40(A).

18. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

19. The SCTPPA provides a private right of action under section S.C. Code § 37-21-80 for a person who has received a telephone call in violation of the regulations prescribed under the statute.

## Factual Allegations

20. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

21. Plaintiff never provided consent to receive prerecorded messages from Defendants.

22. To generate clients for its business, Defendants rely on illegal telemarketing calls, such as the ones placed to Plaintiff.

23. Plaintiff is the sole subscriber to the wireless telephone number (843) 718-XXXX.

24. Plaintiff uses the cellular telephone as a personal residential number.

25. Plaintiff placed the number (843) 718-XXXX on the National Do Not Call Registry in 2021.

26. Upon information and belief, between July 7, 2026 through August 5, 2026, Plaintiff received at least four (4) calls by or on behalf of the Defendants.

27. A list of the alleged calls ("Calls") and corresponding dates and Caller IDs is as follows:

**1.** 7/7 843-264-7741

**2.** 7/29 843-968-9448

**3.** 7/30 843-335-5756

**4.** 8/5 843-432-3404

28. All of the Calls transmitted identical prerecorded messages from "June".

29. All of the Calls transmitted non-working Caller IDs.

**The 7/29/26 Call**

30. For example, on July 29, 2026, Plaintiff received a call (hereinafter the "7/29/26 Call") to his wireless number, (843) 718-XXXX.

31. The 7/29/26 Call transmitted the Caller ID 843-968-9448, a non-working number.

32. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

33. The 7/29/26 Call began with a prerecorded message from "June" calling with the "Home Improvement Group", a fictitious, non-existent company.

34. The recording started as "Hi, this is June calling with the Home Improvement Group."

35. The sound and tone of the voice was unnatural, had unnatural pauses and cadence.

36. Plaintiff disconnected the call indicating he was not interested.

**The 7/30/26 Call**

37. On July 30, 2026, Plaintiff received a call (hereinafter the "7/30/26 Call") to his wireless number, (843) 718-XXXX.

38. The 7/30/26 Call transmitted the Caller ID 843-335-5756, a non-working number.

39. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

40. The 7/30/26 Call began with a prerecorded message from "June" calling with the "Home Improvement Group", a fictitious, non-existent company.

41. The recording started as "Hi, this is June calling with the Home Improvement Group. We are providing free, no obligation quotes for home upgrades like windows, roofing, and siding. It is a simple way to explore options. Just to confirm, are you the homeowner?"

42. The sound and tone of the voice was unnatural, had unnatural pauses and cadence.

43. The voice, name and script in the recorded message of the 7/30/26 Call was the same as the recorded message in the 7/29/26 Call.

44. However, in the 7/30/26 Call, Plaintiff didn't hang up during the recorded message.

45. Instead, Plaintiff replied "yes" to the question and was transferred to a live person who identified himself as "Daniel". Plaintiff engaged with Daniel to investigate the source of the unwanted calls and the actual name of the companies involved.

46. Plaintiff provided a call back number to Daniel and the name "Andrew Nix" solely to track the call and identify the parties.

47. Daniel asked Plaintiff about home improvement and remodeling, offered to provide an estimate for home improvement services, and eventually transferred Plaintiff to an

individual who identified herself as "Linda with Keyword Connect", a d/b/a of Defendant 33 Mile Radius, then transferred him again to an individual who identified herself as "Michelle with *Jacuzzi Bath*", a d/b/a of CGH. During this conversation, the call dropped.

48. Within an hour, Plaintiff was contacted again by Campbell Richards, an employee of CGH, who said she was with "*Jacuzzi Bath*" and asked for "Andrew", the name previously provided by Plaintiff.

49. Ms. Richards attempted to set an appointment with Plaintiff to provide an estimate for home repairs by CGH.

50. While on the phone, Ms. Richards sent an email Plaintiff confirming Defendant CGH's involvement in the 7/30/26 Call referenced above.

51. A copy of the email is attached hereto and incorporated herein as Exhibit A.

52. Richards then transferred Plaintiff to a person she identified as Ed Dugas.

53. Mr. Dugas is the Vice President of Hutchco Home and Bath, a d/b/a of Defendant Carolina Gutter Helmet aka "CGH".

54. Plaintiff explained to Mr. Dugas about the unwanted calls and requested evidence of the required consent from Plaintiff for the Calls.

55. Dugas did not have Plaintiff's consent for the Calls or offer to provide evidence of consent for the Calls to Plaintiff.

56. Dugas informed Plaintiff they were working with "Everconnect", a d/b/a of Defendant 33 Mile Radius, a marketing company to seek out new customers, and indicated that Everconnect was the company that provided Plaintiff's information to CGH.

57. Dugas spelled the name of the company and explained *"E-V-E-R-C-O-N-N-E-C-T. They're a dime a dozen marketing and lead generation company amongst thousands of others. I don't know what to tell you. Feel free to look them up."*

58. Plaintiff requested that Dugas provide the contact information for Everconnect so he could request they stop harassing him with unwanted calls, specifically those being made to generate leads for CGH.

59. Dugas replied *"I'm absolutely not giving you the name of any contact with that company...."*

60. Plaintiff instructed Mr. Dugas not to call him back and hung up.

**<u>The 8/4/26 Call</u>**

61. On August 4, 2026, Plaintiff received a call (hereinafter the "8/4/26 Call") to his wireless number, (843) 718-XXXX.

62. The 8/4/26 Call transmitted the Caller ID 843-432-3404, a non-working number.

63. The purpose of the call was to deliver a solicitation for home repair services for the Defendants.

64. The 8/4/26 Call began with a prerecorded message from "June" calling with the "Home Improvement Group", a fictitious, non-existent company.

65. The recording started as "Hi, this is June calling with the Home Improvement Group. We are providing free, no obligation quotes for home upgrades like windows, roofing, and siding. It is a simple way to explore options. Just to confirm, are you the homeowner?"

66. The sound and tone of the voice was unnatural, had unnatural pauses and cadence.

67. The voice, name and script in the recorded message of the 8/4/26 Call was the same as the recorded message in the 7/29/26 Call and the 7/30/26 Call.

68. Plaintiff replied "yes" to the question and was transferred to a person who identified himself as "David", a live transfer representative. Plaintiff began to engage with Daniel to investigate the source of the unwanted Calls.

69. "David" disconnected the "8/4/26 Call".

70. The four (4) Calls referenced above were sent for the purpose of encouraging the purchase of home improvement services and therefore constituted telemarketing.

71. The Calls used a prerecorded or artificial voice to initiate contact and induce engagement with live agents.

72. In 2013, the FCC held that a corporation or other entity that contracts out its telephone marketing may be held vicariously liable under federal common law principles of agency for violations of section 227(b) or section 227(c) that are committed by third-party telemarketers. In re DISH Network, LLC, 28 FCC Rcd. 6574 ¶ 1 (2013).

73. CGH is liable for telemarketing calls placed by its lead generator, 33 Mile, and transferred to CGH to generate customers for CGH, including Plaintiff.

74. Upon information and belief, CGH sought to hire a lead generator capable of placing outbound calls to potential customers, vetting those customers, and transferring and selling only purportedly interested consumers to its CGH d/b/a the names Hutchco and Jacuzzi Bath Remodel.

75. CGH controlled the day-to-day activities of 33 Mile by providing specific criteria for acceptable leads, including geographic location, homeownership status, and eligibility for specific home improvement services, and required its vendors to adhere to those criteria.

76. CGH authorized 33 Mile to initiate calls to consumers for the purpose of generating leads for CGH and to transfer and sell those leads directly to CGH once a consumer was deemed qualified so that CGH could then call to finalize the sales pitch and set the appointment.

77. CGH compensated 33 Mile only for leads that met CGH's predefined criteria, thereby exercising control over the substance and effectiveness of the telemarketing

calls.

78. CGH accepted the benefits of the unlawful telemarketing calls by receiving qualified leads, scheduling in-home appointments, confirming those appointments by telephone and text message, and dispatching CGH representatives to meet with consumers.

79. CGH ratified 33 Mile's conduct by knowingly accepting and acting upon leads generated through unlawful telemarketing calls, including calls made using prerecorded or artificial voice technology and calls to numbers listed on the National Do Not Call Registry.

80. CGH had the authority and ability to terminate its relationship with 33 Mile upon learning of unlawful or noncompliant telemarketing conduct.

81. CGH failed to terminate, suspend, or adequately supervise 33 Mile despite the illegal nature of the telemarketing calls used to generate CGH's leads.

82. As such, CGH knowingly ratified, approved, and benefitted from 33 Mile's telemarketing conduct.

83. Under principles of actual authority, apparent authority, and ratification, CGH is vicariously liable for the unlawful telemarketing calls and text messages placed by 33 Mile on CGH's behalf.

84. The Calls were unwanted and nonconsensual encounters.

## CAUSES OF ACTION

### Count One:
### Violations of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

85. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

86. By placing four (4) telemarketing calls to the Plaintiff's telephone number, which he registered on the National Do-Not-Call Registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff's number on their Do-Not-Call list, Defendants jointly and severally, violated 47 U.S.C. § 227 (c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

87. These violations were wilful or knowing.

88. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

**Count Two:**
**Violations of the TCPA's Implementing Regulations**
**47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1601(e)**

89. Plaintiffs reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

90. It is a violation of the TCPA to make a telemarketing call without the transmission of caller identification information including either a CPN or ANI and, when available by the telemarketer's carrier, the name of the telemarketer. 47 C.F.R. § 64.1601(e)(1).

91. It is a violation of the TCPA to transmit a CPN or ANI that does not allow any individual to make a do-not-call request during regular business hours. 47 C.F.R. § 64.1601(e)(1).

92. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated the TCPA by causing multiple telemarketing calls to be initiated

to Plaintiff in a 12-month period, without providing a CPN or ANI that allowed any individual to make a do-not-call request during regular business hours, as well as by using "spoofed" caller IDs that did not allow consumers to lodge a do-not-call request during regular business hours.

93. These violations were willful or knowing.

94. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

**Count Three:**
**Violations of the TCPA's Implementing Regulations**
**47 U.S.C. § 227(b)(1)(A)(iii) and/or (b)(1)(B)**

95. Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

96. The Defendants violated the TCPA by sending or causing to be sent calls to Plaintiff using a pre-recorded messages without their prior express written consent.

97. As a result of Defendants' violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500 in statutory damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

98. These violations were willful or knowing.

99. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 U.S.C. § 227(b)(3).

**Count Four:**
**Violations of the South Carolina Telephone Privacy Protection Act ("SCTPPA")**

100. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

101. The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do Not Call Registry (b) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made"

102. The Defendants' violations were negligent and/or knowing.

103. The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;
- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;
- For an award of attorneys' fees pursuant to the SCTPPA;
- For unspecified punitive damages in an amount to be determined by the jury.

August 24 2026

Respectfully Submitted,

Jay Connor Plaintiff, *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
Jayc650@hush.com
(843) 557-5724 (Residential)